## John H. Culver et al. v. Robert H. Benson.

1. BURDEN OF PROOF—*Failure of Consideration and Set-off.*—Where the defendant in an action upon a promissory note assigned before its maturity, pleads a failure of consideration and a set-off, with notice of both in the plaintiff, the burden of proof is upon such defendant to establish his pleas by a preponderance of the evidence.

**Assumpsit,** on promissory note. Appeal from the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the November term, 1895. Affirmed. Opinion filed May 16, 1896.

WEBBER & SHELLEY, attorneys for appellants.

CREA, EWING & WALKER and W. C. JOHNS, attorneys for appellee.

MR. PRESIDING JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

On a promissory note of appellants to Richard F. Piatt for $1,000 and six per cent interest, at one year, dated January 25, 1893, and on the 28th assigned to appellee, he recovered judgment below for $1,120.

The special pleas alleged partial failure of consideration and a set-off, together reducing the principal to $337.83, of which plaintiff, before the assignment, had notice.

Piatt had been running an electric light plant in Decatur. Plaintiff, a farmer and stock raiser of Piatt county, was his step-father, and had loaned him the money to purchase the material, and afterward, from time to time, other money to operate it. Defendants Culver and Gibson were the principal officers of the Decatur Manufacturing Company, which had furnished him some supplies. He had a desk in their office and in his absence they looked after his business. It was not a success, nor likely to become such under his management. Being in debt, several suits were brought and pending against him in attachment, to which both the

plaintiff and defendants herein were made parties as garnishees. By those concerned it came to be thought best to make private sale of the property and with the proceeds pay off these claims. It had been ascertained that some of these could be settled by returning the particular property for which the debts had been contracted, and the rest for a little less than $1,000. Piatt proposed to sell to defendants the property not so returned and take their note, to be assigned to plaintiff, who, upon that security, would furnish the money or otherwise arrange to satisfy them and release the property from the attachments. One of the cases was to be called for trial on the afternoon of the 25th day of January. An hour or so before that a meeting of Piatt and the parties hereto was had at the office of the Manufacturing Company, which resulted in the giving of the note here sued on.

Appellants testified in substance that Piatt there said the property, at cost price, according to the catalogue of the Electric Supply Company, would be worth more than $2,000, and wanted their note for that amount, but there was not time to make an inventory then and they refused to give it; that he finally proposed to take one for $1,000 with the agreement that if an inventory thereafter to be made should show it worth more, they should give an additional note for the excess, and if not more, then the $1,000 note given, should be credited with the shortage, and also with the amount of his indebtedness to them respectively; which they accepted, and thereupon signed and delivered the note. They further testified that appellee took no part in the conversation; that he sat apart, and was very hard of hearing; but that Piatt several times during its course, went over to him and told him what he said to them, and that he nodded his head yes, and once nodded it and said "yes."

The inventory afterward taken, in part but not wholly with Piatt, showed the cost price, at $701.77, and the indebtedness claimed, nearly all of which, however, was to the companies with which Culver and Gibson were connected and not to them individually, amounted to $363.94.

Culver v. Benson.

Appellee testified that although a creditor of Piatt to a large amount—over $4,000—he had no interest whatever in his business or plant; knew nothing of its amount or value, or of his indebtedness to appellants or either of them, or their companies; heard but little, if any, of the conversation on the occasion referred to; but understood that they were trying to effect a sale of the property. Piatt told him they were willing to give a note now for $1,000 and when the invoice was taken pay the balance, and further said there was more than $2,000 worth of stuff there; but he, appellee, said nothing about it because he knew nothing and had no occasion to say anything; that how they settled was none of his business, his only concern being to know that he was indemnified for paying or settling the claims in suit, and that when he was informed that the note for $1,000 was given he went and settled them, and on the 28th, when it was assigned to him at Monticello, he credited Piatt's account with that amount on the book he exhibited.

He most positively denied that either then, or at any time before the assignment, he heard an intimation from Piatt or anybody else that the note would be subject in any contingency to any credit or set-off, and declared that he received it in good faith for just what on its face it purported to be. A long cross-examination failed to weaken the force of this statement.

It was materially corroborated by that of Mr. Lodge, the attorney from Monticello, who represented Benson in the attachment suits and the matter of the proposed settlement. He was not present at the final meeting referred to, but had talked with Culver and Gibson just previously. His testimony seems to show that the talk between them and Piatt about crediting the note was in connection with Piatt's proposition for a much larger one, which they refused to give. Lodge says he at once objected to any note subject to credit, and said Mr. Benson must have an absolute and negotiable one, or there would be no settlement. Gibson said, after they had gone into the cellar and looked at the material there, that they would be safe in giving such

a note for $1,000.    There were three suits pending, two of which Lodge ascertained could be settled by returning a dynamo and some lamps and paying the costs; the one remaining, which was set for trial, was on a note then amounting to about $750.    After so ascertaining, he told Gibson that for such a note he would get Benson to settle them, and Gibson replied that they would give it.    Lodge understood that they were also to go on with the inventory and if the property amounted to more, give an additional note for the excess, and that the suggestion of credits was abandoned. Thereupon he immediately went and told Benson that they would be settled; and shortly afterward, when he saw the note in Piatt's possession, again went to him, told him of the arrangement, took him to the bank where he settled the $750 claim, and then arranged with the attorneys in the other two cases for the return of the dynamo and lamps and payment of the costs, and that afternoon they left for home.    It required nearly the whole of the $1,000 to discharge these claims.

Probabilities as shown by the circumstances seem to be in favor of appellee.    He knew nothing of the value of the property or the indebtedness of Piatt to appellants or their companies.    It would be very unreasonable to expect him to pay $1,000 upon the security of a note apparently for that amount but subject to such uncertainty as to what would be really payable.    Business men are not apt to take notes at their face value where there is any suspicion of adverse equities, except for a chance of profit fully equal to the risk of loss.    Under the arrangement claimed by appellants he had nothing to gain and knowingly incurred a risk of loss which amounted, as ascertained, to $662.17. They were clearly on the safe side, and he no less clearly on the unsafe, as was then apparent.    But in the other view, having had the means of knowing the property and actually knowing the amount of the indebtedness, they might well make an absolute offer.

Piatt was not produced as a witness.    He seems to have disappeared.    The record gives no account of him after a

few days from the date of his assignment of the note. He had probably become satisfied that the inventory would give him no further claim upon the appellants.

Upon the evidence produced there were but two questions—whether the note sued on was given upon an agreement between the payee and maker that in the contingency mentioned it was to be credited as claimed by appellants, and whether appellee had knowledge of such agreement by direct information from the payee before its assignment to him; on both of which the affirmative was to be shown in order to establish the defense set up; and the burden of proof as to each was upon the appellants. Whatever may have been the finding of the jury upon the first, they must have found against appellants on the other; and although evidence in relation to it was conflicting, there was enough in support of the verdict to forbid our interference with it.

Having considered the objections urged to the rulings of the court on the trial and in respect to the instructions, we think neither of them presents a question so close as to require discussion. Perceiving no material error in the record, the judgment will be affirmed.